### UNITED STATES *v.* FOSTER and others.

*(Circuit Court, E. D. Virginia.* February 19, 1881.)

1. ELECTION OFFICERS—REV. ST. § 5515.

 In order to convict an officer of an election, in which a representative in congress is voted for, of neglecting or refusing to perform any duty in regard to such election, under section 5515 of the Revised Statutes, it must be shown that such neglect or refusal was coupled with some wrongful purpose, motive, or intent.

2. AUDITOR'S RECEIPT—CODE OF VIRGINIA, c. 43, § 7.

 Section 7 of chapter 43 of the Code of Virginia, defining how money shall be paid into the state treasury, provides, among other things, that after the amount paid shall have been lodged in a bank, and a certificate of the fact delivered to the treasurer, "the treasurer shall give a receipt for the sum so paid; and, upon the same being delivered to the auditor, * * * he shall grant a receipt therefor." *Held*, under this section, that a receipt signed by the auditor's clerk was sufficient.

CAPITATION TAX—PAYMENT BY ANOTHER—CONSTITUTION OF VIRGINIA, ART. 3, § 1—PENAL CODE OF VIRGINIA, c. 8, § 26.

An amendment to the constitution of the state of Virginia (article 3, § 1) provided that in order to entitle a citizen to vote "he shall have paid to the state, before the day of election, the capitation tax required by law for the preceding year;" and the Penal Code (chapter 8, § 26) provided that "if any person, directly or indirectly, give to a voter in any election any money, goods, or chattels, or pay his capitation tax, under an agreement, expressed or implied, that such voter shall give his vote for a particular candidate, such person shall be punished by a fine of not less than $20 nor more than $100; and the voter receiving such money, goods, or chattels, or having his capitation tax paid in pursuance of such agreement, shall be punished in like manner with the person giving the same." *Held*, that the payment of such capitation tax by another qualified the citizen to vote, whether the Penal Code had been violated or not.—[ED.

The indictment set out that the defendants were judges of election for the third ward precinct of the town of Manchester, at an election held on the second of November, 1880, for choosing, amongst other officers, a representative in Congress from the third district of Virginia, and charged that they did, at said precinct, in said election, "unlawfully neglect and refuse to perform a certain duty required of them by the laws of the United States and of the state of Virginia," in this: that they refused to receive, give effect to, etc., the votes of John Burton and 12 other persons who are particularly named in the indictment. By an amendment of the constitution of Virginia in the first section of its third article, adopted in the year 1877, it was provided that besides the qualifications before required to entitle a citizen to vote, "he shall have paid to the state, before the day of election, the capitation tax required by law for the preceding year." By the seventh section of chapter 43 of the Code of Virginia, defining how money shall be paid into the state treasury, it is provided, among other things, that after the amount paid shall have been lodged in a bank, and a certificate of the fact delivered to the treasurer, "the treasurer shall give a receipt for the sum so paid; and upon the same being delivered to the auditor * * * he shall grant a receipt therefor." And the Penal Code of Virgina, adopted March 14, 1878, provides in section 26 of chapter 8 that—

"If any person, directly or indirectly, give to a voter in any election any money, goods, or chattels, or pay his capitation tax, under an agreement, expressed or implied, that such voter shall give his vote for a particular candidate, such person shall be punished by fine not less than $20, nor more than $100. And the voter receiving such money, goods, or chattels, or having his capitation tax paid in pursuance of such agreement, shall be punished in like manner with the person giving the same." But there is no law, state or federal, invalidating the vote of the person whose tax has been paid.

It was shown in evidence that the several persons named in the indictment as having been rejected as voters were in all other respects qualified voters, and that in respect to the payment of the capitation tax they had exhibited to the defendants, as judges of election, receipts precisely alike, except as to the name of the tax payer, and which were of the following tenor:

"COMMONWEALTH OF VIRGINIA,
"OFFICE OF THE AUDITOR OF PUBLIC ACCOUNTS,
"RICHMOND, VA., October 30, 1880.

"$1.05.

"Received of John Burton the receipt of the treasurer of the commonwealth for $1.05, on account of capitation and personal-property taxes returned delinquent for the non-payment thereof by the treasurer of Manchester city for the year 1879.

"G. W. DUESBERRY, Jr., Clerk."

It was also shown in evidence that the defendants, judges of election, based their refusal to receive the votes of the holders of these receipts, first upon the ground that they did not know that G. W. Duesberry, Jr., was a clerk of the auditor of Virginia, and did not know from his receipts that the taxes had been paid, and that thereupon a witness at once made affidavit that he knew that Duesberry was such clerk, and knew, moreover, of his own knowledge, that these particular taxes had been paid. It was proved that after several hours of the election day had passed the judges saw a written opin-

ion, signed by the judge of the corporation court of Manchester, to the effect that such receipts were not genuine unless signed by the state auditor, John E. Massey, himself. It was also proved that the judges of election rejected the votes of the persons in question on the additional ground that the taxes had not been paid by the persons offering to vote, but had been paid by some one for them, and that although the taxes were paid, yet, the payment being made contrary to the law of the state quoted above, the votes could not be received.

No proof was adduced by the prosecution, other than the foregoing, to show a wrongful *animus* or intent on the part of the defendants in rejecting the votes of the 13 persons named in the indictment.

Counsel on either side submitted the case without argument to the jury, with the understanding that the court would instruct the jury on the points of law involved, which the court did orally, but in substance as follows:

*L. L. Lewis,* U. S. Att'y, for prosecution.

*George D. Wise* and *A. M. Keiley,* for defendants.

HUGHES, D. J., (*charging jury.*) This case is important as affording an opportunity for a judicial construction of the election laws upon the somewhat difficult questions arising on the evidence before us. This is the only manner in which a court of justice can concern itself with elections. Their office is to try and pass upon controversies between parties; either between the government and accused persons in criminal causes, or between one person and another in civil causes. A court of justice can regularly have to do only with causes *inter partes.* All its forms and proceedings lead to an issue of fact or law, or both, *between litigants;* and its function consists in deciding such issues. As incidental to this function it may grant injunctions and restraining orders for protecting property in controversy or the rights of litigants; and it may issue writs of *habeas corpus* as a means of ascertaining whether a person in confinement is lawfully confined upon a criminal charge. But these powers and processes are only incidental to its chief and principal office of

determining controversies *inter partes.* A court cannot, on or before an election day, send out its process to all whom it may concern prohibiting judges of election generally or particularly from doing this or that, or directing them to give a law this or that construction. Judges of election are not part of the judiciary establishment, and are not amenable to instructions from courts of justice in the exercise of their high duties. Whether regarded as servants of the legislature or as a branch of the executive, judges of election are wholly independent of courts of justice in the power freely to perform their duty in the manner dictated by their own consciences, and in conformity with their oaths and the laws of the state and Union. If courts attempt interference with them in the act of discharging their duty at the polls, their action is extrajudicial, is *coram non judice,* is without authority of law, and is not binding upon judges of election. It is only when a case like the one at bar comes in a regular manner before a court of justice, and election laws are thus brought under judicial construction, that a court of justice can act in an authoritative manner; and it is only then that its construction of election laws enters into the body of the law of the land, and as such becomes binding upon the conscience of judges of election in the same manner with the statute law itself.

The principal question in the present case is whether the men who offered to vote as named in the indictment were entitled to vote; for, if they had a right to vote, and their votes were rejected, then these judges of election, the defendants, in rejecting their votes, did "*neglect and refuse to perform their duty*" in the premises, and are technically guilty of the charge set out against them in the indictment. I say they are technically guilty by the mere act of "neglecting and refusing" to receive the votes; for the law on which the indictment is based (section 5515 of the Revised Statutes of the United States) makes the naked act of so "*neglecting and refusing*" a crime, and uses no qualifying term, such as "corruptly," or "wilfully," or "with wrongful intent," as necessary to be proved, besides the naked act. But, although such

is the wording of the statute, I instruct you that the law disdains to punish a man who innocently or ignorantly or in good faith commits an unlawful act, and therefore this indictment, though it need not necessarily have done so, charges that the *neglect and refusal* to perform their duty by these defendants was "unlawful." In order to a conviction in this case I instruct you, therefore, that the prosecution must not only have proved a neglect and refusal by these defendants to perform the duty required of them by law, but that the neglect and refusal were coupled with some wrongful purpose, motive, or intention on their part.

The principal question in the present case, I repeat, is whether the 13 persons who offered to vote on the auditor's receipts, a sample of which is given above, were entitled to vote. It is conceded that in all other respects these persons (who were all colored) were qualified voters. It is also conceded that these receipts are genuine documents; that is to say, they are veritably what they purport to be,—receipts issuing from the "office of the auditor of public accounts" of the "commonwealth of Virginia," at Richmond. Their genuineness was not disputed, and could not have been disputed in any part of the territory of Virginia. The only point made by the judges of election was that the receipt was signed by a clerk of the auditor's office, and not by the auditor himself. They held that section 7 of chapter 43 of the Code of Virginia, in providing that on the treasurer's receipt for money paid into bank being delivered to the auditor the latter officer shall "grant a receipt therefor," required that this receipt for a receipt should be signed by the auditor himself.

When this question was submitted to me by the grand jury which found this indictment, I answered that the genuineness of this receipt as a document issuing from the auditor's office, not being disputed, its sufficiency must be presumed until the contrary is shown. This I did, on the well-known maxim of law, *omnia præsumuntur rite et solemniter esse acta;* which means that all official acts of officers done under their official oaths, in the line of their official duty, must be presumed to have been rightly and legally done, in due form,

until the contrary is shown. That such acts were rightly done must be taken for granted, from the necessity of the case, else infinite inconvenience, obstruction, and confusion would take place, and the affairs of society could not go on. I also asked the grand jury to observe that the language of the Code in respect to the auditor was not that he shall *sign and grant* a receipt for the treasurer's receipt, but simply that he shall grant such receipt. The law seemed to contemplate that the pressure of labor upon the auditor's office might be so great at times as to render it inconvenient, and sometimes impossible, for him to sign all receipts with his own sign-manual, and in that view seems to have employed the word "grant" instead of the words "sign and grant." Besides, a mere receipt for a receipt is not so important an instrument but that the duty of signing it may very safely be delegated to a clerk.

Another objection of the defendants to receiving the votes of the persons holding these receipts was founded on the clause of the recent amendment to the state constitution declaring that the citizen, in order to be entitled to vote, shall, among other things, "have paid to the state, before the day of election, the capitation tax required by law for the preceding year;" and evidence was offered to show that the judges surmised, inferred, or supposed that these persons had not paid their taxes in person, but that some one else had paid them in their stead; and this was supplemented with still other evidence, proving it to have been the opinion of these defendants that taxes so paid did not remove the disqualification from the persons who were offering to vote.

My instruction to you, gentlemen, on this whole set of opinions set up for these defendants, is that each of the three grounds of objection to the votes in question is insufficient. The clause in the constitution is one of that class of clauses which all legal and political maxims of construction require to be liberally interpreted and applied. If a citizen's tax has been paid, and he is otherwise qualified, then, by

that fact, he becomes a qualified voter. If it is paid for him by another, not in the way of a bribe, and without any understanding, express or implied, that he is to vote for a particular candidate, then the payment is legal and in every way proper. If it is paid as a bribe, or with an understanding, express or implied, that he is to vote for a particular candidate, then he commits an offence punishable by a $20 fine, for which he may be prosecuted; and that is the only penalty which the law visits upon the act: it does not invalidate the vote or re-impose the disqualification of the voter.

And so, if the taxes of these men had been paid, whether in violation of law or not in violation of law, the right to vote attached to them on such payment of the tax, and their votes should of right have been received. Judges of election have nothing to do with penal laws. They are not at liberty to suspect, as to a citizen who pleads that his tax has been paid, that another person has paid it for him; to try him summarily under a penal statute, which condemns him only in a penalty of a $20 fine, and to convict and sentence him to the different penalty of being disqualified from voting; acting in the space of five minutes as prosecutor, judge, and jury. This would be a revival of star-chamber methods, and is repugnant to all our American ideas of free government and civil liberty.

I therefore instruct you, gentlemen, that these receipts were sufficient evidence of the payment of the taxes of the men named in them; that these men became thereby qualified to vote on the receipts, whether the law of 1878 had been violated or not; and that, even if the law had in fact been violated, such violation only subjected the parties to the offence to a fine of $20, triable and punishable by a court of justice, and not to disfranchisement by these judges of election; for the violation did not re-impose the disqualification which had existed before the tax had been paid.

I have thus disposed of the principal question in this case, to-wit, whether the persons named in the indictment as having offered to vote were qualified voters. They *were* qualified

voters under the law of the land, and in rejecting their votes the defendants did "neglect and refuse to perform a duty" required of them by the laws of Virginia and the United States, and they are technically guilty of the offence charged in the indictment. It only remains for me to say something on the question whether the defendants neglected and refused to do their duty in the premises with wrongful motive or intent.

You can only judge of intention by words and acts. Men were not made with windows in their breasts through which we might read the motives of their conduct. We can discover intentions only from words and acts. It is shown that the judges acted upon the opinion in writing of the judge of the corporation court of Manchester, an officer upon whom the laws of the state devolve the ministerial, but not judicial, duty of appointing judges of election. It is certainly natural for conscientious men to consult the opinions of lawyers in whose learning and judgment they have confidence. But judges of election ought as certainly to be cautious how they accept opinions not given under the sanction of an oath or of official responsibility, as the basis of their action in so grave a matter as the disfranchisement of citizens from the privilege of voting. It is not a part of the duty devolved by law upon judges of courts of justice to give opinions on questions of law to other than grand juries, or persons or bodies having like relations to their courts. If given, such opinions are not official, have not the sanction of an official oath, and carry no other authority than the moral weight of the authors of them. The defendants in this case, as judges of election, would have had a right to call upon the attorney general of the state or the commonwealth's attorney of their corporation for his opinion on questions arising before them; and such an opinion would have come to them under the sanction of the official oath; but even with such sanction it would not have been binding upon these judges of election. They are officers who must act upon their oaths, their consciences, and their own responsibility to the law. If they "neglect and refuse to perform their duty" with wrongful intent, it is a

poor and useless shift to attempt to shelter themselves behind the opinions, whether official or unofficial, of lawyers who advised them to do so.

Still, the fact that these defendants did seek and accept legal advice is an indication of good faith, and is a fact proper to be .considered, even if the advice which they took mislead them into the commission of a penal offence.

With these remarks I will leave the jury to deal themselves with the question whether the rejection of the votes under consideration was done in good faith or with wrongful intent, and will only remark that if that question is left in doubt by the evidence, the defendants are entitled to the benefit of the doubt.