J. F. GROVES v. COMMISSIONERS OF RUTHERFORD COUNTY.

(Filed 8 December, 1920.)

**1. Elections—Majority—Tie—Taxation.**

It requires a majority of the qualified voters in favor of an election upon the question of adopting a special tax to carry it, and the tax cannot be declared as carried when by striking from the registration disqualified voters the result is a tie.

**2. Elections—Voters—Animus Revertendi—Registration.**

One who has registered for an election upon the question of a special tax, is not disqualified to vote thereat because of his temporary absence from the county to perform a contract he is obliged to perform, and has not taken his household goods, or changed his place of actual residence, but had always the *animus revertendi.*

**3. Elections—Taxes—Tender—Voters—Soldiers—County Commissioners —Exemptions.**

The county commissioners are without authority to exempt from taxes one abroad in the service of his country as a soldier in the army; but when he has sent the money to his father, who told the sheriff that he had the money in the bank, and was informed by the sheriff that his son had been exempted by the commissioners, and in fact the father had the tax money and otherwise would have paid it, it is unnecessary that the actual cash should have been tendered in order for the vote of the son to have been taken, and it is erroneous for the election officers to have stricken his name from the register.

CIVIL ACTION, tried before *Webb, J.,* at October Term, 1919, of RUTH-ERFORD, upon these issues:

"1. Was Fred Pendergrast a registered qualified voter, with a right to vote in the special school election held on the 'Edwards' Special-tax District, on 17 May, 1919? Answer: 'No.'

"2. Was W. C. Mitchum a qualified registered voter, with a right to vote in the special election held in 'Edwards' Special School-tax District on 17 May, 1919? Answer: 'No.'

"3. Was J. L. Vickers a qualified registered voter, with a right to vote in the special school election held in the 'Edwards' Special School-tax District on 17 May, 1919?    Answer: 'No.' "

From the judgment rendered the plaintiff appealed.

*Solomon Gallert for plaintiff.*
*W. C. McRorie for defendants.*

BROWN, J.   This was an action instituted by plaintiff, in behalf of himself and other taxpayers in the proposed special-tax school district to be established in Gilkey Township of Rutherford County, said district being known as the "Edwards" School District, numbered 14-3, to enjoin the commissioners of Rutherford County from declaring an election held in said district as having adopted the special tax voted upon at said election, and to enjoin said county commissioners from levying said tax.

At said election it appears that there were 23 voters registered, and that on election day, after the polls were opened, the name of W. C. Mitchum, who had registered, was stricken from the registration book by the judges of the election (page 21), thus leaving 22 names on the book.   It appears that 12 votes were cast in favor of the special tax, but the vote of Fred Pendergrast, which was admitted to be illegal, and so found by the jury, which was cast in favor of said tax, should be deducted from said 12 votes, thus leaving only 11 legal votes having been cast in favor of said tax.

Defendants claim that the vote of J. L. Vickers, who was duly registered, should not be counted against said tax, on the ground that he had not paid his poll tax for the year 1918 on or before 1 May, 1919, and they contend that this vote should be deducted from the registered names of voters, reducing the number of qualified registered voters, as defendants claim, to 21.   Plaintiff claims that Vickers' vote should be counted against said tax, because he tendered payment of his poll tax in ample time, and the sheriff refused to receive it.

Defendants claim that the name of W. C. Mitchum was properly erased from the registration book, because he was not a resident of the school district when the election was held.   Plaintiff claims that the election officers unlawfully and wrongfully erased Mitchum's name from the registration book, (1) because he having been regularly registered for said election, the election officers had no right to erase his name; (2) because Mitchum was a resident of said school district, and a legally qualified voter therein; and (3) because his name had been erased without notice to him and without his knowledge, approval, or consent, after the polls had been opened, and while the election was being held.

With the votes of Vickers and Mitchum both counted as against the tax—neither of them voted, and their votes would necessarily count against the tax—the result of the election would be a tie, and the tax would be defeated, a majority of the qualified registered voters not having voted for the tax.

1. We are of opinion, upon the evidence, if it is believed, that the name of W. C. Mitchum was improperly stricken from the registration books. There was evidence tending to prove that Mitchum had not abandoned his home; that he was temporarily absent on business; that he did not move his personal property; that he took only such as was necessary; that he had taken a logging contract which would keep him absent several months.

Mitchum testified as follows: "When I moved down to Bostic it was not my intention to give up my residence in the Edwards School District, not naturally for my temporary job; I rented the land expecting to come back, and did not want to lay out; I worked on the logging job from November up until March, when shut down and contract not finished; when they were talking of shutting down, I went to Gilkey Township and went to the fellow I·rented the land to and tried to buy out their grain crop, but they would not sell; after the sawmill shut down I had to go to work to support my family, but I made an effort to get back home." Mitchum is corroborated, as to his intention of leaving only temporarily, by W. H. Small, who testified: "I had a conversation with him (Mitchum) about the time he moved to Bostic; I tried to buy his land and mules; he said he did not care to sell, and I asked to buy his corn and household and kitchen furniture, and he said 'No'; that he was going to move a batching outfit; that he did not expect to be down there long, that it was not permanent."

If the evidence is believed to be true, it indicates conclusively that Mitchum did not intend to change his residence when he went to Bostic. He went to Bostic, *animum revertendi*. He was there temporarily to carry out a logging contract. He was a mere sojourner at Bostic, without the intention of making it a permanent home. He could not vote at Bostic for that reason. 15 Cyc., 291. Domicile is the place where a person lives or has his home, and to which, when absent, he has the intention of returning. *Hannon v. Grizzard,* 89 N. C., 120; *Boyer v. Teague,* 106 N. C., 576; *Norris v. Gilmer,* 129 U. S., 315; *Reynolds v. Cotton Mills,* 177 N. C., 412.

We are of opinion that the court should have instructed the jury as requested by the plaintiff.

"1. That if the jury find from the evidence, by the greater weight thereof, that the witness W. C. Mitchum left the Edwards School District for the specific purpose of carrying out a logging contract with the

defendant, G. E. Morgan, and that at the time he left said school district he had the intention of returning to said Edwards School District after he had accomplished and completed said logging contract, then the court charges you that the said W. C. Mitchum did not lose his residence in the Edwards School District, and having paid his poll tax for the year 1918, on or before 1 May, 1919, he would be a registered qualified voter in said district, and you should answer the second issue 'Yes.' "

The court directed the jury to answer the third issue "No," holding that J. L. Vickers was not a qualified registered voter. Upon this issue his Honor charged the jury as follows:

"The court charges you that if you believe all the evidence in this case you will answer the last issue 'No.' The evidence seems to be that Vickers was a soldier in the war; that he had registered, and the question of paying poll tax arose. That the county commissioners and everybody had kind feelings for every boy in service, and it was discussed by a great many of the commissioners, and some of them made an order that the boys should be exempt from poll tax. Of course they had no legal right to make such an order. Mr. Vickers, the father of the boy, came to town for the purpose of paying the tax, and the court understood him to say he went to the sheriff, and the sheriff went into the office and looked at the book and told Mr. Vickers that the county commissioners had exempted his boy from paying poll tax; and Mr. Vickers told the sheriff he had come to pay it and wanted to pay it, and had come for the purpose of paying it, and stated he had money in the bank that his son had sent him to pay it, and that he was ready and willing to pay it, and the sheriff told him the county commissioners had exempted his son. The court is of the opinion that that was not a legal tender, so if you believe all of the evidence you will answer the third issue 'No,' that he was not a qualified voter because he had not paid his poll tax prior to 1 May, 1919."

In our opinion, according to the evidence, there is a legal tender of the poll tax, and the sheriff was in error to have refused it. The father had the right to tender the poll tax for his son, who was a registered voter, but absent in the service of the Government. The father testified that he had the money to pay the taxes ready; that he had put in the money in the bank that day; that his boy had sent it to him, and that he was ready and prepared to pay it. The sheriff having refused to receive it, the father was not required to go through the ceremony of taking out the money and presenting it to the sheriff. There is eminent authority for the position that the absent soldier was exempted from the payment of poll tax in the opinion of the Attorney-General, Judge Manning, formerly a distinguished member of this Court, in an opinion of 13 April, 1920, in which he says: "This office has ruled with refer-

ence to soldiers who were in France or Germany, or in service in the various camps throughout the country at the time for listing poll tax in 1919, that they may vote without paying the poll tax for 1919. These soldiers, either by their sense of obligation to their native country, or by compulsion of the Federal Government, were, in their service to that country, placed in such a position that they could neither list nor pay these taxes. It would, it seems to us, be manifestly inequitable and unjust to deprive them of their right to vote under such circumstances."

We are indebted greatly to the learned and able brief of Mr. Gallert in the preparation of this opinion.

New trial.