[No. 3014.   Aug. 3, 1925.   Rehearing Denied
Sept. 2, 1925.]

## BACA v. VILLAGE OF BELEN et al.

### SYLLABUS BY THE COURT

1. A married woman, being otherwise a qualified elector, owning with her husband community property in the village of Belen, whose husband had paid the tax assessed against such community property during the year preceding an election to authorize the issuance of the village bonds to procure funds for the construction of a sewer system for such village, was qualified to vote upon the question of the issuance of such bonds; she thereby having paid a property tax within the contemplation of the provisions of section 12, art. 9, New Mexico Constitution.

Appeal from District Court, Valencia County; Ryan, Judge.

Injunction suit by Venceslado Baca against the Village of Belen and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded, with directions.

R. P. Barnes, of Albuquerque, F. C. H. Livingston, of Belen, and C. J. Roberts, of Santa Fe, for appellants.

A. B. McMillen and L. F. Lee, both of Albuquerque, for appellee.

### OPINION OF THE COURT

BICKLEY, J. [1] This is an appeal from a judgment of the district court of Valencia county, enjoining and restraining the village of Belen and its board of trustees from issuing sewer bonds of said village, in a suit instituted by Venceslado Baca, a taxpayer of said village. The board of trustees of the village of Belen, on the 18th day of February, 1924, adopted an ordinance providing for the submission to the qualified electors of said village at the ensuing regular election for trustees on the 1st day of April, 1924, the question as to whether or not said village should issue $100,000 of sewer bonds for the purpose of constructing a sewer system for said village. On

the face of the returns, there were cast in favor of the proposition 184 votes, and against it 123 votes.

The trustees were proceeding to issue the bonds, and on the 1st day of July, 1924, Venceslado Baca, the appellee, filed suit in the district court of Valencia county against the village of Belen and the trustee of said village for the purpose of enjoining and restraining said board from issuing said bonds. A temporary restraining order was issued on the same day, and appellants were required to show cause, on the 11th day of July, as to why said temporary order should not be made permanent. A motion was filed, resulting in the filing of an amended complaint, in which it was set up that there were 124 illegal votes cast at said election, that the majority received for the bond issue was 61 votes, and that there was not a sufficient number of legal votes cast at said election in favor of said bond issue to legally authorize the same. The names of the claimed illegal voters were set out, all but 17 of them being married women. The complaint also set up that it was impracticable to construct a sewer system in the said village, because there was no public water supply. Appellant filed an answer and return to the order to show cause, which set up that the married women whose names were set out in the complaint were qualified electors at said election by reason of the fact that said married women were the owners of community property with their husbands, that said community property had been returned for taxation and the taxes upon said property had been paid. As to 15 of the other alleged illegal voters, the answer set up, on information and belief, that they were each duly qualified electors of said village and entitled to vote. The answer admitted that two of the voters set out in the complaint were not entitled to vote, and that their votes were received and counted. There was a denial of the charge that there was not a sufficient number of legal votes cast at said election in favor of said bonds to legally authorize the same, and set up that a ma-

jority of the legal voters voted in favor of said proposition.

The answer questioned the legal sufficiency of the complaint to state a cause of action as to the impracticability of the sewer system, and set up further that the sewer system was practicable, and denied that its construction would constitute a waste of public funds. It was further set up in the answer that, even if said married women, by reason of their community property interests, were not entitled to vote, only 79 of said married women voted for the issuance of the bonds, and 54 voted against it, and that the proposition to issue said bonds received a majority of the qualified votes of the village. It also set up that 19 persons, not qualified voters of the village, had voted at said election against the issuance of said bonds.

A reply was filed denying the new matter set up in the answer. On the 9th day of August, 1924, findings of law and final judgment were filed by the court. On the disputed issues by the case, the court found that 126 votes were cast at said election by persons who had not paid a property tax within the village of Belen during the preceding year. Finding No. 7 is as follows:

"The court further finds that at the trial of said cause the defendants, by their attorney, offered to prove that 124 voters out of the 126 voters at said election, found by the court to have not paid a property tax within the village of Belen during the preceding year, were each, respectively, a married woman, whose husband had paid a tax on community property within the preceding year, to which offer to prove, the plaintiff, by his attorneys, objected as incompetent, irrevelant, and immaterial, which objection was sustained by the court, to which ruling of the court, the defendants, by their attorney, excepted."

The court found, as a matter of law, as follows:

"The court finds as a matter of law that the 126 votes received at said election, of persons who have not paid a tax within the preceding year, were each illegal and left the result of said election in doubt, and that said bond issue was not legally authorized in the manner required by law, and that the relief prayed for in plaintiff's amended complaint should be granted."

Upon these findings and conclusions of law, judgment was entered, making the injunction perpetual.

Errors were assigned which, as appellee states in his brief, present two propositions: The first is that a married woman who is a qualified elector of a city, town, or village, whose husband has, during the preceding year, paid a property tax on community property belonging to said married woman and her husband, is entitled to vote on the question of incurring a debt by such city, town, or village. In view of the conclusion we reach concerning this proposition, it is not necessary to consider the second proposition raised by the assignments of error.

The debt-contracting power of a municipality is regulated by section 12 of article 9 of the state Constitution. In so far as material, it reads as follows:

" * * * No such debt shall be created unless the question of incurring the same shall, at a regular election of councilmen, alderman or other officers of such city, town or village have been submitted to a vote of such qualified voters thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."

It appears from finding No. 7 that the appellants offered to prove that 124 voters, found by the court to have not paid a property tax within the village of Belen during the preceding election, were each, respectively, a married woman whose husband had paid a tax on community property within the preceding year. It is thus apparent that the trial court was of the opinion that the payment of a tax upon community property, owned by the community, within the village of Belen, by the husband, did not entitle such married woman to vote upon the question of the issuance of bonds, although she was otherwise a qualified elector.

Such is appellee's contention, and he argues that community property is not assessed to a married woman, and that no tax receipts are issued to her,

and that she would hold no tax receipts which would be evidence of her having 'paid a property tax, and that anything else, excepting a tax receipt, would be inadequate proof to show the payment of a tax, and that the election judges must rely upon the tax record, and cannot go beyond such tax records, and that to do so would create great confusion in conducting bond elections, and that only such qualified electiors as have actually and individually paid a property tax, evidenced by a properly issued tax receipt to the person claiming the right to vote, is entitled to vote at such bond election.

Section 203, c. 133, Laws of 1921, provides:

"Every person, firm, association or corporation shall, in each year, make a list of all property subject to taxation of which he is the owner or has the control or management. * * * "

Section 206 of the same chapter provides:

"The property of a ward is to be listed by his guardian; * * * of a married woman, by herself or husband. * * * "

Chapter 84, Laws of 1915, is as follows:

"Sec. 16.  Power of the Husband Over Community Property.  The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate: Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; And, Provided, Further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect."

In this state we have the community property system taken from the civil law, under which a wife's interest in property is quite different from the majority of the states in the Union, which have patterned their statutes after the common law, in which the wife has only a dower right in the property acquired by the husband after marriage. In such property she has

no present vested interest, but only an expectancy. Here however, she has a present, existing, vested interest, equal in all respects to the interest of the husband. In the case of Beals v. Ares, 25 N. M. 459, 185 P. 780, the question was fully considered by the court and the conclusion reached was:

"From the foregoing, the following propositions may be accepted as settled: (1) That under the law in this jurisdiction, the wife's interest in the community property is equal with that of the husband; that while he is by statute made the agent of the community and given dominion and control over the community property during the continuance of the marriage relation, his interest in the property by reason of such fact is not superior to that of his wife."

[2] The effect of the statute of 1915, quoted supra, was not considered in the Beals v. Ares Case. It is not necessary to go to the extent of saying that, since the amendment of section 2766 of the Code by chapter 84, Laws of 1915, the husband is no longer the head of the community, and, as such, the manager of the community property. The change intended to be effected by the legislation doubtless was that the husband should no longer, after the amendment, have the absolute power of disposition of real property of the community. Beyond that, the husband acts as a sort of agent of the community. McKay, in his work on Community Property (2d Ed.) §§ 46, 47, states that the true doctrine is that as head of the community the husband acts in a representative capacity with respect to the wife's interest in community property, and that this power is found in the law of the family. By section 2745 of the Code, the status of the husband as the head of the family is specifically preserved. We think his position as head of the family warrants his payment of taxes levied upon community property out of the proceeds of community personal property of which he has the management and control, and during coverture the sole power or disposition other than testamentary. In so doing he would not be acting as an interloper or volunteer with respect to the payment of the taxes, which might be, strictly speaking, a burden upon the wife's interest in such community prop-

erty. A tax upon community property is a community debt, subject to satisfaction out of community property, and it seems that it would be proper for the husband, as agent of the community, to pay the tax on community property in order to forestall interest, penalties, liens, and foreclosures which might follow in the event of the taxes being permitted to become delinquent.

As appellee attaches some importance to the fact that no property was assessed to the married woman individually in this case, we call attention to the rule laid down in many well-considered cases, that property which is held jointly by several owners should be jointly assessed. And in Fleischauer v. West Hoboken Township, 40 N. J. Law, 109, it was held that an assessment for taxes will not be declared invalid simply because it is made in the name of only one of two tenants in common. Section 222 of chapter 133, Laws of 1921, contemplates that, where a tract of land is claimed by several persons, having or claiming an undivided interest therein, the same may be listed by any one of such persons. As we understand the system of taxation in this state, the lien of taxes is against the property as a whole and not against undivided interests therein.

"The qualification of voters at such an election (bond election) may be fixed by either constutional provision or legislative action and the privilege of voting limited to the taxpayers, the male taxpayers, qualified voters, freeholders, or such other classes as may seem advisable," Abbott Public Securities, § 135.

As the question presented here has never been discussed or passed on by this court, and as it involves matters of great importance to the public generally, we will quote at some length from some of the cases showing illustrations of constitutional and statutory limitations upon voting and the construction which has been placed upon such provisions by the courts, as these may serve to point the way to a rule of action under our Constitution and laws.

In Re District Attorney of Dauphin County, 11 Phila. (Pa.) 645, is available because the opinion discusses earlier cases, and is regarded by later writers as a leading case. The constitutional provision under consideration, in substance, is that every citizen over the age of 21 years, having resided in the state 2 years next before the election, and within that time paid a state or county tax, which shall have been assessed at least 2 months before the election, shall enjoy the rights of an elector. The court said:

"The nonpayment of taxes by the voter, according to the provisions of the constitution, is the ground mainly relied on for annulling the election of Mr. McPherson to the office of district attorney. The petition avers that a large number of votes, to the number of ————, were received and counted for the respondent, in the different wards and townships particularly described, given by electors who had given no state or county tax, according to the requirements of the constitution, but that the tax on which they voted was paid for them by another, to the petitioners unknown, without the knowledge or previous authority of the persons whose votes were so received and counted in the general return, and should have been stricken from the general computation.' Is this a sufficient ground for rejecting the votes? It is not averred that the electors were not assessed in due time, in proper form, and by the lawful officer; but the complaint is, that the tax was paid by some one for the¹ delinquent, without his knowledge or previous authority. Had it been stated that the name of the citizen was inserted in the tax list, subsequent to the first day of August, without his personal application to the assessor, it might show a violation of the second section of the act of January 30, 1874, which, if it did not render the assessment void so far as it confers the right of suffrage, would certainly subject the officer to a severe penalty. If the tax was received and receipts given, when there was no assessment, it would confer no right of suffrage, as the same must be made at least two months, and the tax paid one month, before the election.

"It is contended that the tax must be paid by the voter in person, and cannot be done for him by another, without his previous request, and to prove that such is the true construction of the constitutional provision, we are referred to the case of Catlin v. Smith, 2 Serg. & R. 267, which as we understand it, proves nothing of the kind. The position assumed in that case was, that if the tax itself was imposed on the county or city six months before the election, and paid at any time, it gave the right of suffrage; but the Court held that a proper construction of the Constitution required that it should be assessed on the individual at least six months prior to the election. This was under the Constitution of

1790, but we have no doubt but that of 1873 will bear the same construction, substituting two months for six.

"The case of Humphrey v. Kingman, 5 Metc. [Mass.] 162, is relied on to establish the principle that the tax cannot be paid through an agent, yet that case proves that where the agency is recognized, the voter acquires the same right as if payment were made by his own hand. Some expressione are used by the judge in delivering the opinion, which would indicate that where the party declined to repay the tax, or only acquiesced in the payment in order to obtain the right of suffrage it would not confer it. But we must bear in mind that the case was a hard one—a suit against the election officers who had probably been misled by the shuffling ways of the intended voter and, also, that the statute of Massachusetts may be differently worded from our Constitution. Taking the whole case it rather proves that a man can pay through an agent with the same effect as when done personally.

"From the adoption of the Constitution in 1790, down to the present time, the practice to pay taxes through an agent has always been held as good and valid, as when done by the voter in person; and the presentation of the receipt at the pay rolls, and claiming the right to vote by virtue of it, has always been considered sufficient evidence of the adoption of the agency. It is averred, however, in the petition, and when that is demurred to, we must take it to be true, that these voters had their taxes paid without their knowledge, or previous authority conferred on the person paying. We must hold in this as in other cases, that a subsequent ratification is equivalent to an original command according to the legal maxim, 'Omnis ratihabitio retrotrahitur et mandato equiparatur.' This has been applied to almost all kinds of cases. A sale of property void for want of authority is valid if afterwards ratified, 7 Wright, 226. So goods purchased by an agent contrary to the instruction in his power of attorney is binding when acquiesced in, or ratified by the principal. 14 P. F. Smith, 247. And a principal not promptly disavowing the act of the agent, makes it his own. 19 P. F. S. 426. He must promptly disavow it as soon as made known; If not done, silence if proof of acquiescence. 4 Wh. 314. He must declare his dissent in a reasonable time, or will be presumed to have ratified. 3 Harris, 229; 4 Casey, 22. Where bne without authority acts for another, the latter may ratify by assuming its burdens, and thus entitle himself to its benefits. 6 P. F. Smith, 23. And a stranger has no right to object that an agent has exceeded his authority. 12 Harris, 23.

"The only doubt which can exist on this branch of the case arises out of the constitutional mandate, that the tax must be paid at least thirty days before the election, and whether the voter is obliged to show that he assumed and acknowledged the payment by the agent before that time. On careful consideration we are satisfied that the ratification adopts the act as of the time of its performance. It is thus

carried back by relation to that period. Such is the doctrine laid down by ancient and modern writers, and by judicial decisions. See 18 Viner's Abt title Ratihabitio, pages 157, 158, and a host of authorities there cited."

The decision is the case, of U. S. v. Foster et al. (C. C.) 6 F. 247, is stated in the syllabus as follows:

"'An'amendment to the Constitution of the state of Virginia (article 3, § 1) provided that in order to entitle a citizen to vote he shall have paid to the state, before the day of election, the capitation tax required by law for the preceding year; and the Penal Code, (chapter 8, § 26) provided that 'if any person, directly or indirectly, gave to a voter in any election any money, goods, or chattels, or pay his capitation tax, under an agreement, expressed or implied, that such voter shall give his vote for a particular candidate, such person shall be punished by a fine of not less than $20 nor more than $100; and the voter receiving such money, goods or chattels, or having his capitation tax paid in pursuance of such agreement, shall be punished in like manner with the person giving the same.' Held, that the payment of·such capitation tax by another qualified the citizen to vote, whether the Penal Code had been violated or not."

The following is the statement of a decision from a Delaware case as found in the American Digest; we have not been able to find the original report:

"Where the county taxes have for several years been assessed against the land of one who died intestate, and paid by one of his sons who owned the land as coparceners, held, that another son might vote, so far as payment of said tax is required to qualify him." State v. Livingston, Houst. Cr. Cas. 109.

In the case of State ex rel. Attorney General v. Dillon et al., 32 Fla. 545, 14 So. 383, 22 L. R. A. 124, the act under consideration provided:

" * * * Prior to the holding of the first city election as provided herein, there shall be given to each person who was entitled to qualify himself as an elector at the last state election by registration and the payment of his poll taxes for the years 1890 and 1891, and failed to do so, an opportunity to qualify by registering and himself paying his own poll taxes for such years, more than two weeks before said first city election." (Underscoring ours).

It was provided that the commissioners of election who prepared a list of persons authorized to vote at the election; such list to be revised so as to contain "all

and only the names of persons at that time residents of said city, and who were at the time of the last general state election qualified electors of the election districts in said city, or who have since that time registered and themselves paid their own poll taxes due for the years 1890 and 1891.'' The court said:

"Our construction of the provisions mentioned is, that they do not deprive the voter of his right to pay his poll taxes through an authorized agent, and that a payment made by such agent would be a valid payment under the terms of the act. A liberal construction should obtain in favor of the voter's right to make the payment through another, and the act does not in terms deny such right. It is true [that] it says 'himself paying his own poll taxes' for the years mentioned, but the general principle, 'qui facit per alium facit per se' should apply and the payment through an authorized agent would be the payment by the voter himself."

The cases seem to be uniform that a person may pay his taxes through the agency of another, but the claim is made in some cases that it must be shown that it was the taxpayer's money which ultimately went to pay the tax in order to qualify him as an elector. The Pennsylvania court, in the case of Gillen et al. v Armstrong, 12 Phila. (Pa.) 626, did not consider that the question of whose funds the tax was paid with was a controlling factor. The court said:

"Secondly, I indorse the views so clearly expressed by Mr. Justice Pearson, in the contested election of District Attorney of Dauphin county (32 Legal Intell. 59), that a citizen may vote upon the payment by another of the proper tax for him. If the official of the law receives the tax for the voter's account it is of no importance whose hand or whose money pays it. The payment discharges the tax and qualifies the voter. Whatever claim the party paying may have against the voter ratifying the act, it is quite clear that the state or county cannot say the tax has not been paid after receiving it for the voter's account."

In the case of In re Griffiths, 1 Kulp. 157, the Pennsylvania court held that, even where the taxes were paid by a political committee or other person, and such payment is not made the means of influencing the voter, a subsequent ratification of the act of the voter is equivalent to the giving of prior authority. In the case of Groves v. Commissioner of Rutherford County

et al., 180 N. C. 568, 105 S. E. 172, it was decided that, where a registered voter was absent in military service, his father's offer to pay the poll tax, without physically tendering the money, was a sufficient tender to qualify the son as a voter.

Attention is called to the case of Whittaker v. Watson, 68 Ark. 555, 60 S. W. 652, because there the Constitution required the voter to exhibit a receipt or other evidence that he had paid his poll tax next preceding the election before being entitled to vote. It might be observed that, if our Constitution makers had desired to make the presentation of a tax receipt the only evidence of the payment of the tax and the qualification of the elector to vote, they would have done so, and the failure so to do would be an omission which would be significant in construing the terms of the Constitution. In that case the court said:

"The Constitution of this state declares that 'every male citizen of the United States, or male person who has declared his intention of becoming a citizen of the same, of the age of twenty-one years, who has resided in the state twelve months, in the county six months, and in the precinct or ward one month, next preceding any election at which he may propose to vote, except such persons as may for the commission of some felony be deprived of the right to vote. by law passed by the general assembly, and who shall exhibit a poll tax receipt or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the state of Arkansas.' etc. Const. Amend. art. 21. The * * * evidence of the payment of the poll tax is to make the payment of the tax by the elector a condition upon which he shall be allowed to vote, and to prohibit him from voting until he does so. We conceive the object and intent of this provision of the Constitution to be not only to induce the citizen to whom the support of the common schools, for which the tax is levied, but to exclude from voting the citizen who does not take an interest in the welfare of his country or value his vote sufficiently to pay a poll tax. He, however, need not pay the tax in person, but may in good faith authorize another to pay it for him, or, if another has done so without having been previously authorized, he may adopt or ratify the act; but he must do so with a bona fide intent and promise to reimburse him. In this way only can the voter be secured in the free and untrammeled exercise of his right of suffrage. The acceptance of the payment of a poll tax as a gift tends to induce him to so vote as to please the partisan, candidate or

other person who paid the same for him. This is contrary to the spirit of the requirement of the Constitution. In re White's Election, 4 Pa. Dist. R. 363, 372, 373; Humphrey v. Kingman, 5 Metc. (Mass.) 162; McCrary, Elect. (4th Ed.) §§ 109, 110."

On the question of the manner of assessment of the property as having a bearing upon the qualifications of the taxpayer to vote, attention is called to the case of Commonwealth ex rel. Underwood v. Shrontz, 213 Pa. 327, 62 A. 910. There the court said:

"On the admitted facts the appellee was a qualified elector, entitled to vote at the election, and therefore eligible to office. He was a natural-born citizen, upwards of 21 years of age, and, having regard to the substance of the qualification by payment of a tax, he had complied with that requirement. The appellant argues that there was a defect in the form of the assessment which destroyed its efficacy. The tax was assessed against certain property in the name of Shrontz Bros., but it was admitted that Shrontz Bros. were the appellee and his brother, who were owners as tenants in common of the land assessed. It also appeared that this fact was known to the assessor and was intended to be truly set forth in the assessment. Even without this, however, the conclusion would have been the same. No error of the assessor, accidental or othewise, could deprive an elector of his right, if in fact he was qualified. The distinction is well taken by the learned judge that the appellee's vote might have been properly refused at the election because he was not armed with the proper evidence of his right; but in a judicial inquiry into the existence of the right the court is not debarred from ascertaining the actual facts no matter what the prima facie case presented by the tax receipt. The Constitution regards substance, not mere form. It makes no requirement that the tax shall be assessed against the elector by name, or personally, or as owner of property in severalty. If it is against ascertained property, and he, being in fact the owner, pays it, the requirement is fulfilled. As the learned judge below said, if the assessment had been in the names of John F. Shrontz, Jr., and Clark Shrontz individually as tenants in common, there could have been no question about the tax payment, and if the expression Shrontz Bros. in fact meant the same thing the result would be the same. A blunder of the assessor in the form of the assessment could not deprive the elector of his constitutional right."

The case of Saxton v. Mayer and Council of Delaware City et al. (Del. Ch.) 88 A. 605, answers several contentions of appellees. In this case it was decided that each of two devisees of land was entitled to vote, though the land was assessed to the testator, and it was

also decided that it was not necessary that the name
of the taxpayer appear on the assessment list as a
taxpayer in whose name property had been assessed,
on which the tax assessed had been paid.  Also the
court answers the argument that there would be great
and disastrous confusion in the conduct of elections
if the election officers were not provided with an ar-
bitrary test of determining who is a taxpaying elector.
The qualification for voting under consideration was
that, being a resident of the town, "he or she shall
have paid all taxes heretofore levied and assessed
against him or her, and shall produce a tax receipt
for the same when demanded by any person entitled
to vote at said election."  The court said:

"As to the eligibility of the several persons named in the
bill, there seems to be no rule applicable to all of them.  It
was the manifest object of the law under consideration to
give to the resident taxpayers of the town, who bear the
burden of taxation, the right to decide whether the bonds
should be issued.   Two qualifications are imposed on each
voter: (1) Residence; and (2) the payment of all taxes as-
sessed against him.   The defendants urge that there is an-
other qualification, viz. that the name of the voter must ap-
pear on the assessment list as a taxable, in whose name
property has been assessed and on which the tax assessed
has been paid.   But this is taking the act too literally and
overlooking its real purpose, as above stated.   Unless a tax
be assessed to him (i. e. in his name), and the tax be paid,
a property owner resident in the town is, according to this
view, disqualified.   The only principle of general application
in this case is one which disapproves that conclusion.   It is
urged that the assessment list is the only sure guide and that
otherwise the election of officers must decide questions of
law as to titles to land, the respective rights of trustee and
cestui que trust, and the like, and that at the polls there is
no suitable opportunity to hear and decide such questions,
which may be complicated.   But there is nothing to prevent
them from ascertaining in advance of the election day the
qualification of voters by means of an antecedent registration,
or investigation by inquiries in doubtful cases, or some other
reasonable method.    Then, again, there is no real reason
why all the questions as to eligibilty which have in fact
arisen, as appears in the bill in this case, should not have
been rightly determined by the election officers at the polls
on the day of election by the advice of counsel.   Endless
confusion would not necessarily result from this course, and
it would not be quite impossible under such conditions to
hold the election, as claimed by the defendant's counsel.   Be-
sides it would not be just to a resident owner of land in the

town to deprive him of his opportunity to voice his wishes effectively, because of mistakes of others in the manner of assessing his property, over which mistakes he has no control. A liberal, rather than a strict rule of qualification of voters representing property should prevail at an election, when those who pay the debts through the taxation of their property or voting whether the debts shall be contracted. It seems necessary, then, to consider, apart from the contents of the assessment list, the right of each of the five persons named in the bill to vote."

In this connection, we call attention to the fact that section 2006 of the New Mexico Code provides that:

"When any person offers to vote, whose qualifications are not personally known to any of the judges, he may be examined under oath as to said qualifications and those who take a false oath shall suffer the penalty prescribed by law for perjury."

So it would appear that the Legislature has provided a means for the election officers to examine a voter as to his qualifications.

The community property relation is sometimes spoken of as being analagous to a partnership. In King et al. v. Board of Canvassers and Registration of City of Providence, 37 R. I. 254, 92 A. 569, the Supreme Court of Rhode Island decided (syllabus):

"Const. art. 2, § 2, provides that no person shall vote in the election of councilmen, etc., unless he shall have paid a tax assessed on his property valued at least at $134. Laws 1910, c. 640, § 22, provides that no person who claims the right to vote on the payment of a tax assessed against him on property for councilmen, etc., shall vote unless on production of a certificate from the collector of taxes that he has paid the tax assessed against him. Gen. Laws 1909, c. 8, § 32, authorizes the board of canvassers and registration to summon witnesses and compel the production of documents to determine questions arising before the board. A partnership consisting of two equal partners was assessed and paid a tax on personal property valued at $1,200 under Gen. Laws 1909, c. 57, § 9, as amended by Laws 1921 c. 769, § 39, taxing partnership property to the firm as an entity. Held, that the partners though paying no other tax, having a property interest in the firm of more than $134 on which a tax was paid, were entitled to vote, and it was no objection that a partner's interest might not be determinable, since the board had the power to determine it."

Even in those states having constitutional or statutory provisions restricting the voting privilege to those

who have "in person" paid, or who "personally pay" a tax, the courts have held that these phrases do not require that the voter be physically and bodily present when the tax is paid, but only that his taxes are paid by him out of his own funds, though it be through an agent.

In the case of Tilton et al. v. Herman, Treasurer, et al., 109 Va. 503, 64 S. E. 351, the Supreme Court of Virginia said (syyabus):

"Const. 1902, § 20, art. 2 (Code 1904, p. ccxii), provides that male citizens who have personally paid poll taxes for three years shall be entitled to register, and section 21 (Code 1904, p. ccxii), gives each person the right to vote if he has personally paid such poll tax at least six months prior to the election. Held, that the phrase, 'personally pay', in section 21, does not require that the voter be physically and bodily present when he pays his tax, but only that his tax be paid by him out of his own funds, though the amount be sent by check or through an agent."

And in Wallis et al. v. Williams, 50 Tex. Civ. App. 623, 110 S. W. 785, the court said (syllabus):

"The constutional right of suffrage does not depend upon the payment by the voter of his poll tax 'in person', all that is required being that he should pay his poll tax on or before a stipulated day, and hence, though the statute relating to the payment of poll taxes as a cbndition to the right of suffrage directs the voter to pay the tax in person or give a written order therefor, a voter would not be deprived of his right of suffrage by reason of the payment of his tax by another person without written order, where the receipt obtained by him from the tax collector was regular upon its face, and where the statute did not expressly provide that a failure to obtain this receipt in the manner directed by the statute would disfranchise the voter."

It will be seen that our constitutional provision is less restrictive than many of those in the illustrations cited. We would not undertake to lay down any hard and fast rule for the guidance of election officers hereafter, but we think that, from the arguments in the cases cited, our constitutional provision under consideration permits a husband or wife who owns community property in the city, town or village, being qualified electors thereof, who have paid a property tax therein upon such community property during the year pre-

ceding the election, either with his or her own hand, or by an agent, may vote at an election to authorize such city, town or village to incur a debt for a lawful purpose. It is our opinion that it is immaterial whether such community property stands assessed on the tax records in the name of her husband or wife, or both, and that, if the husband pays the taxes on community property without any specific grant of power from the wife, the law will imply authority in him to do so by virtue of his family relation, particularly unless it is shown that it is done contrary to the expressed wishes of the wife. Because our statutes provide that "husband and wife contract toward each other obligations of mutual respect, fidelity and support," we think that if the wife, with the acquiescence of the husband, pays the taxes on community property, the husband and wife, in so far as the tax paying requirement is concerned, are entitled to vote.

For these reasons, the judgment of the trial court will be reversed, and the cause remanded, with directions to award a new trial, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.