STATE OF NORTH CAROLINA, UPON RELATION OF F. G. GOWER, v.
C. W. CARTER.

(Filed 28 September, 1927.)

**1. Quo Warranto—Title—Public Office—Actions—Statutes.**

A civil action in the Superior Court is the proper procedure to try the title to a public office between two rival claimants, when one of them is in possession under a claim of right and exercising the official functions thereof. C. S., 2671.

**2. Same—Elections—Burden of Proof.**

The burden of proof is on the plaintiff in *quo warranto* to show that the one in possession was not entitled thereto by reason of a number of unlawful votes that had been cast for him, and that otherwise the plaintiff would be entitled thereto, and this is not shown when by rejecting certain votes cast for the defendant an even number of votes had been cast for each one. C. S., 2671.

**3. Same—Domicile.**

Where the plaintiff in an action in the nature of *quo warranto* to try title to a local public office within the county, has shown that each party had received the same number of votes for the office and depends upon the illegality of one of the votes cast for the present incumbent, evidence tending to show that this voter was domiciled or resident in another county and had only a temporary residence in that of the election, with the *animus revertendi*, is erroneously excluded.

**4. Same—Constitutional Law—Statutes.**

Under our Constitutional provisions, Art. VI, secs. 2 and 3, as to the qualifications of voters and the time of their residence at the place of the election held, requiring registration, etc., and the statutes passed in pursuance thereof, C. S., 2654, 2665, the qualification of voters in a municipal election is the same as in a general one, and applies in an action in the nature of a *quo warranto* to try the title to the office of mayor of a town when contested by a rival claimant.

**5. Same—Residence—Animus Revertendi.**

In order for a voter to cast his ballot in a municipal election to the office of mayor of the town, it is necessary for the contestant to show where there is a tie vote between two rival claimants that the domicile of a voter, whose vote will vary the result, was elsewhere, and it may be shown by direct or circumstantial evidence that in fact his domicile or residence was not at the place he had cast his vote, but at another place, with the *animus revertendi*.

**6. Evidence—Nonsuit—Statutes.**

A motion by defendant as of nonsuit upon the evidence, C. S., 567, will be denied if the evidence, taken in the light most favorable to the plaintiff, and every reasonable intendment or inference to be drawn therefrom tends to maintain his right.

APPEAL by plaintiff from *Harris, J.,* at June Term, 1927, of JOHNSTON. Reversed.

*Parker & Martin and Paul D. Grady for plaintiff.*
*W. H. Lyon, Roy Carter and J. W. Bailey for defendant.*

CLARKSON, J. This is a civil action in the nature of *quo warranto,* to try the title to the office of mayor of the town of Clayton, Johnston County.

In *Harkrader v. Lawrence,* 190 N. C., at p. 442, it is said: "This is the method prescribed for settling a controversy between rival claimants when one is in possession of the office under a claim of right and in the exercise of official functions or the performance of official duties; and the jurisdiction of the Superior Court in this behalf has never been abdicated in favor of the board of county canvassers or other officials of an election. *Rhodes v. Love,* 153 N. C., 469; *Johnston v. Board of Elections,* 172 N. C., 162, 167."

Defendant in his brief says: "The official returns in the election for mayor of Clayton showed 238 votes for F. G. Gower and 239 votes for C. W. Carter. The latter was declared elected; F. G. Gower brought the action, alleging that certain votes counted for C. W. Carter were illegal. It is conceded that plaintiff produced evidence tending to show that Joseph Romanus was not a qualified voter, and that he voted for C. W. Carter. This makes a tie. But a tie is not resolved by an action in the nature of *quo warranto*—the statute provides otherwise. C. S., 2671. The burden, therefore, was upon contestant, Gower, to show one more illegal vote for C. W. Carter."

The plaintiff in his complaint charges that of the 239 votes cast for defendant, C. W. Carter, fifteen were illegal voters and gives the names of each and why they were not entitled to vote. It is admitted on the record that Joseph Romanus, who was born in Lebanon, near Jerusalem, was not a naturalized citizen and not entitled to vote.

For a decision of the case, it is only necessary to consider the vote of Eloise Sparger. The evidence is as follows:

J. B. Sparger testified as follows: "Lives in Mount Airy; has a daughter named Eloise Sparger; she is in Mount Airy, and is too sick to attend court; she was served with a subpœna to be here. He has lived at Mount Airy for sixty odd years; his daughter was born and reared at Mount Airy. She is twenty-two or three years old. She went to Clayton to teach school. Last year was her first year.

Q. Did she have any other purpose in going to Clayton, except to teach school? Defendant objects; sustained, and plaintiff excepts. She had not taught school before last year, but had attended school.

Q. When she is not engaged in teaching school or attending school, where does she stay and make her home? Defendant objects; sustained, and plaintiff excepts. She stayed in Clayton about nine months; went there about the beginning of the school and left immediately after the school closed. She came home to Mount Airy about 1 June; she spends her vacations at my home in Mount Airy. She spends her time at my home except when she is away visiting, teaching school or going to

school. I had heard her state for whom she voted in the Clayton election." The above questions were competent.

D. M. Price testified as follows: "That he stayed around the polls at the election in Clayton on 3 May nearly all day; *he saw Eloise Sparger go to the polls and vote;* she took her ticket for mayor from the Carter pile—got her ticket off the Carter pile. He saw her put it in the box. (Cross-examination.) He was at the house where the election was being held when she voted. There was a pile of tickets for each of the two men running for mayor. He did not look to see whether there were any Carter tickets in the Gower pile or any Gower tickets in the Carter pile. There were not supposed to be any. *He saw the sort of ticket she actually got, saw her when she took it up and saw C. W. Carter's name on it;* he was not there all day, but was there the biggest part of the day."

The Constitution of North Carolina, Art. VI, sec. 2, in part says:

"*Qualifications of voters.* He shall reside in the State of North Carolina for one year, and in the precinct, ward, or other election district, in which he offers to vote four months next preceding election: *Provided,* that removal from one precinct, ward or other election district to another in the same county shall not operate to deprive any person of the right to vote in the precinct, ward or other election district from which he has removed until four months after such removal," etc.

Sec. 3. "*Voters to be registered.* Every person offering to vote shall be at the time a legally registered voter as herein prescribed and in the manner hereafter provided by law, and the General Assembly of North Carolina shall enact general registration laws to carry into effect the provisions of this article."

C. S., 2654, in part, is as follows: "*Registration of voters.* It shall be the duty of the board of commissioners of every city and town to cause a registration to be made of all the qualified voters residing therein, under the rules and regulations prescribed for the registration of voters for general elections."

C. S., 2665: "All qualified electors, who shall have resided for four months immediately preceding an election within the limits of any voting precinct of a city or town, and not otherwise, shall have the right to vote in such precinct for mayor and other city or town officers."

The qualifications for voting in a municipal election are the same as in the general election. *Echerd v. Viele,* 164 N. C., 122.

In *Roberts v. Cannon,* 20 N. C., at p. 269, it is said: "It may not be amiss to remark that by a residence in the county, the Constitution intends a domicile in that county. This requisition is not satisfied by a visit to the county, whether for a longer or a shorter time, if the stay

there be for a temporary purpose, and with the design of leaving the county when that purpose is accomplished. It must be a fixed abode therein, constituting it the place of *his home*. This residence or domicile is a fact not more difficult of ascertainment, when required as the qualification of a voter, than residence or domicile at the moment of a man's death, which is so important in regulating the disposition and management of his estate after death."

In *Hannon v. Grizzard,* 89 N. C., at p. 120, it is said: "Residence, as the word is used in this section in defining political rights, is, in our opinion, essentially synonymous with domicile, denoting a permanent as distinguished from a temporary dwelling-place. There may be a residence for a specific purpose, as at summer or winter resorts, or to acquire an education, or some art or skill in which the *animus revertendi* accompanies the whole period of absence, and this is consistent with the retention of the original and permanent home, with all its incidental privileges and rights. Domicile is a legal word and differs in one respect, and perhaps in others, in that, it is never lost until a new one is acquired, while a person may cease to reside in one place and have no fixed habitation elsewhere." *Chitty v. Parker,* 172 N. C., p. 126; *Reynolds v. Cotton Mills,* 177 N. C., 412; *Groves v. Comrs.,* 180 N. C., 568; *S. v. Jackson,* 183 N. C., 695; *In re Ellis,* 187 N. C., 840. See *Ransom v. Comrs. of Weldon, ante,* 237.

In *Boyer v. Teague,* 106 N. C., at p. 631-2, it is said: "The jury were allowed, properly, to say whether George Foy was a resident of Forsyth County. He left the home of his parents in Rockingham, where he had certainly become a resident, every summer, to work in the tobacco factories, and left when the season was over. The fact that he stated that he considered Winston his home did not settle the question of law. The jury were at liberty to conclude, from his own statement, that he had never abandoned, at any time, the idea of returning to his father's house when the season was over, and had never lost his right to vote in Rockingham County."

The fact as to the residence or domicile of a person at a given time may be proved by direct or circumstantial evidence. The intention of the person may be shown by his acts, declarations and other circumstances.

The court below sustained the motion of defendant for judgment as in case of nonsuit, C. S., 567, to which plaintiff excepted and assigned error. The motion should have been refused. On a motion of defendant to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

There was sufficient evidence to be submitted to the jury (1) that Eloise Sparger at the time she voted was a resident or domiciled at Mount Airy, (2) that she voted for defendant. The probative force is for the jury to determine. The judgment below is

Reversed.