Statement.

# Richmond.

TILTON AND OTHERS V. HERMAN, TREASURER AND OTHERS.

March 24, 1909.

1. ELECTIONS—*Payment of Poll Tax—Treasurer's List.*—The decision of this court in *Tazewell* v. *Herman,* 108 Va. 416, to the effect that a treasurer of a city or county should embrace in the list which he is required to file with the clerk the names of only such persons as have *personally* paid their poll taxes within the time prescribed by law is correct, and is adhered to.

2. ELECTIONS—*Poll Tax—"Personal" Payment—Constitutional Law.*— The words *"personally paid"* as used in section 21 of article II of the Constitution of this State mean that the tax therein referred to must be paid by the voter out of his own estate or means and not by another out of that other's estate or means. The payment need not be by the voter in proper person. His bodily or physical presence is not necessary. It is enough if the payment be out of the tax payer's estate or means; and the actual payment may be by the tax-payer himself or by his check, or through the hands of his clerk or authorized agent, or perhaps in other ways.

3. ELECTIONS—*Poll Tox—"Personal" Payment—Treasurer's List.*—If a record in the treasurer's office sufficient to enable a newly elected treasurer to certify who has personally paid their poll taxes for the previous years be not kept, the legislature has the power to require such a record to be kept, but the fact that this has not been required heretofore has no bearing upon the determination of the question as to what is meant by the words "personally paid" or "personally pay" used in the Constitution.

Error to judgment of the Court of Law and Chancery of the city of Norfolk on a petition for a *mandamus.* Judgment for petitioners, awarding the writ.

*Reversed.*

*Attorney General Wm. A. Anderson* and *R. Randolph Hicks,* for the plaintiffs in error.

*John B. Jenkins* and *Nathaniel T. Green,* for citizen defendants in error.

· No appearance for Herman, Treasurer.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to the judgment of the Court of Law and Chancery of the city of Norfolk, directing, by mandamus, H. D. Herman, treasurer of that city, to include in the list required of him by law to be made and filed five months before each regular election with the clerk of the corporation court of the city only those voters who were physically present, and not all voters in his city who had paid, at least six months before such regular election, the State poll taxes required by the Constitution during the three years next preceding that in which such election is held; this case being a sequel to the case of *Tazewell et als, v. Herman, Treasurer,* 108 Va. 416, 60 S. E. 767, 61 S. E. 752, 2 Va. App. 337, recently decided by this court in which it was held that said list to be made up and filed by the treasurer should only contain the names of those persons who at least six months prior to the election had *personally* paid the poll-taxes required of them as a prerequisite to their right to register and vote at an ensuing regular election. In denying a rehearing of that decision, the court said: "What constitutes a *personal* payment, therefore, within the meaning of article II of the Constitution, was not involved in the case (*Tazewell* v. *Herman*), was not argued by counsel for the defendant in error, and was not considered or passed upon by the court. A failure, therefore, to pass upon that question furnishes no ground to grant a rehearing. When a case is before the court, where that question is involved, it will be con-

sidered and decided, but until then any expression of opinion on the subject would scarcely be proper, and, at most, would be mere *obiter.*"

The question not involved in that case, and, therefore, not passed upon, is the precise question presented in this; the lower court having held that the treasurer of the city of Norfolk, in making out and certifying to the clerk of the corporation court the list of persons who had paid their capitation taxes, etc., should include therein only the names of those voters "who were *physically* present when they themselves paid their poll taxes to the treasurer, and should omit therefrom the names of such persons as were not *bodily* present when their poll taxes were paid on or before the second day of May, 1908." In other words, the learned judge below held that the words "personally pay" mean payment only in *bodily* person.

The learned Attorney General, considering the public interests involved in the case to be of great moment, on behalf of those interests unites with counsel for plaintiffs in error in urging upon this court not only to review and reverse the ruling of the lower court in this case, but to review and overrule its decision in *Tazewell* v. *Herman, supra.*

Considering these questions in inverse order, we deem it only necessary to say with respect to the last mentioned, that this court, upon mature consideration of the reasons urged and ably argued in the present case, why the decision in the case of *Tazewell* v. *Herman, supra,* should be abrogated and a ruling the reverse of that therein made should be made in this case, for the reasons stated in the former opinion, as well as others which will be incidentally, but necessarily, referred to in disposing of the remaining question now before us, is of opinion that the ruling of the court upon the question involved in the former case should be adhered to, and that ruling regarded as conclusive of that question.

Coming then to the remaining question: What is meant by the words "personally paid" as used in section 20, of article II

of the present Constitution, and "personally pay," as used in section twenty-one of the same article? In other words, does the use of these words in the Constitution, where the right of franchise is dealt with, mean that, in order to entitle a citizen of the State to register and vote, he must in person, *in bodily presence,* pay to the treasurer of his city or county the poll-taxes required of a voter as a condition precedent to the right to register and vote, or do these words mean only that the tax must be paid by the voter out of his own estate or means, and not by another out of that other's estate or means?

To determine that question, we should look to the evil which the framers of the Constitution had in view, and then to the remedy intended to be applied.

As said in the opinion in *Tazewell* v. *Herman, supra,* "It is manifest that one of the reasons for requiring that the voter shall personally pay his poll tax was to remedy a great evil which had prevailed at one time under the Constitution of 1869. That evil was that political and other organizations, candidates for office, and others, paid or caused to be paid, the poll tax of voters in order to improperly influence and control the votes of the persons whose tax they so paid."

That is a clear statement of the evil which our late convention sought to remedy when they came to frame article II of the present Constitution which deals with elective franchise and qualification for office; and it was unquestionably the purpose of that article to exclude from the electorate of the State that class of citizens who are not entitled to have the right of franchise by reason of not "having sufficient evidence of permanent common interest with, and attachment to, the community" (Sec. 6, Bill of Rights); and clearly a citizen who permits the poll tax required of him as well as of all other citizens of the State over the age of twenty-one years, by section 173 of the Constitution, to be paid by another for corrupt and illegal purposes, might reasonably expect to be excluded from the class of citizens declared in the bill of rights to be entitled to the

right of franchise. And it is equally as clear to us that it was never the intent of that able body of men who framed our present Constitution to make it even possible that hundreds and thousands of the best citizens of our State may be deprived of their right of franchise, although they had paid out of their own estate or means, as contradistinguished from the means or estate of others, the poll-taxes required as a prerequisite to their right to vote, merely because they did not in *bodily presence* make the payment to the collecting officer. From such a lamentable result in thousands of instances there would be no escape, if the word "personally" used in the Constitution be restricted to *"in propria persona."*

It is true that the word "personally" may, and often does, mean *in person* and often means *"in propria persona;"* but that is not its necessary and only meaning, and many instances could be recited in which it could not be given that meaning. Suffice it to say, that the word is used in a number of our existing statutes, in which it could not with any sort of reasonableness be given the meaning which is here contended for.

The principal definition of the word "personally" given by Webster and the Century Dictionary is, "in a personal manner," and every one of ordinary intelligence understands that he does not personally or "in a personal manner" pay a debt he owes unless its payment reduces his estate or means to the extent of the payment; and that if this be not the case, but the debt be paid by another out of that other's means, such debtor could not claim that he had personally discharged the obligation. Where, however, the debtor was the source of the payment and paid the debt because he desired to discharge the obligation out of his own funds, it is, as would seem clear, a personal payment, no matter by what method or avenue the money is made to reach the hand of the creditor.

So, as would seem equally clear, where it appears that a voter was the source of the payment of the poll-taxes required of him, and paid them out of his own estate or funds because

he wished to pay them, it is a personal payment by the voter, whether the money was handed by the voter to the treasurer, or to one of his deputies, or sent by check drawn on a bank in which the drawer has funds to meet its payment, or by the hand of the tax-payer's clerk or duly authorized agent; and a payment by a voter of his poll-tax in either of the methods mentioned other than the handing of the money himself to the treasurer, would as effectually guard against the corrupt practices which article II of the Constitution is designed to prevent as would a manual delivery of the money to the treasurer, and the voter would stand on the same footing, as far as being free from influence is concerned, in the one case as in the other, since there would be in neither case the *apprehended* ground of improper influence or control of the voter.

Any other construction of the constitutional provision would no more effectuate the intendment of the provision than the one we think is required, and certainly would be much more unreasonable, when it is remembered that if the ruling of the lower court could be upheld, many of our best citizens would, as before stated, be deprived of their right to vote, although the taxes required of them had in good faith been paid within the required time, out of their own means, and not out of the means of another; and that too merely for the reason that the voter, either by sickness, or absence miles and miles away from his home on business or perhaps in search of health, could not appear in person, "in bodily presence," and hand the money himself to the treasurer or his deputy in due time.

The answer to the argument for defendants in error, that it would be no more unreasonable to require the voter to go in person to the treasurer and pay his poll tax than to require that he go in person to register as a voter, and also when he casts his vote, is, that, in order to become a registered voter, the person offering to register has to take and subscribe a required oath, and it may be to answer interrogatories propounded to him by the registrar, which oath cannot be taken

and subscribed, nor answer made to interrogatories propounded to him, by anyone except the voter himself; and, as voting in this State is required to be by ballot—secret ballot—*ex vi termini,* the voter must cast his ballot in person—in bodily presence. With respect to registration and voting, the requirement of bodily presence is necessary, and, therefore, reasonable; while, with respect to the payment of a tax as a prerequisite to the right to vote, it would be not only unnecessary, but unreasonable.

And the answer to the further contention, that the meaning of the words "personally pay," applied by the learned judge below, would more surely effectuate the intention of the framers of the Constitution, is that the agent of the "political or other organizations, candidates for office or others," spoken of by Buchanan, J., in *Tazewell* v. *Herman, supra,* would have only to stand on the outside and give to each voter, whose vote is purchasable or could be controlled, the amount of the poll-tax as he enters the treasurer's office, and upon the voter handing the money to the treasurer he would be qualified to vote.

We are aware that the ruling of this court in the former case places a power in the hands of the treasurers which may be greatly abused, but such is the mandate of the Constitution, as it appears to us.

As said by Keith, P., in *Willis et als.* v. *Kalmbach et als., ante,* p. 482, 3 Va. App. 205, 64 S. E. 342, handed down at the present term: "It is impossible in a Constitution, however elaborate, to provide for every contingency; something has to be left to the discretion of those intrusted with the conduct of government."

For this very reason, no doubt, the convention, recognizing that it might be found necessary to require further evidence than that of the treasurer's list as to the prepayment of capitation taxes, by section 38 of article II left that duty upon the legislature. By that section of the Constitution, as interpreted by this court in *Tazewell* v. *Herman, supra,* the treasurer is

required to place on the list only persons who have "personally" paid the poll-taxes required of them, and paid the same at least six months prior to the date of an ensuing regular election, which it is declared shall be conclusive evidence of the facts stated in the list for the purpose of voting; and if for any reason a voter's name is improperly omitted from the list a remedy is provided by the same section of the Constitution. If the treasurer should, for an illegal and corrupt purpose, improperly place on the list the name of any person or persons not entitled to have his or their names thereon, beyond question the general laws of the State provide adequate means for the punishment of such malfeasance in office.

The suggestion, that if the treasurer is not to put on the list the names of the persons who did not in person—in bodily presence—pay their poll-taxes, the list would not afford the auditor the intended proof as to all who had paid, loses its entire force when it is remembered that the general laws make ample provision for requiring a treasurer to account for all the State's revenues he receives.

The question we are considering being one of first impression in this State, the adjudications of our court have afforded us no assistance; but the authorities from without the State sustain the view we have taken.

In *State, ex rel. Lamar* v. *Dillon,* 32 Fla. 545, 14 South. 383, 22 L. R. A. pp. 124, 139 (a well argued and considered case), the question involved was very similar to the one we have under consideration.    The Florida law provided that the voter should qualify himself "by registering and *himself paying his own poll-taxes,"* for the requisite years more than two weeks before the election and the precise question was whether the voter was required to pay those taxes in his own person, which question was decided in the negative, the opinion of the Supreme Court of Florida saying: "Our consideration of the provisions mentioned is that they do not deprive the voter of his right to pay his poll-taxes through an authorized agent, and that a pay-

ment made by such agent would be a valid payment under the terms of the act. A liberal construction should obtain in favor of the voter's right to make the payment through another, and the act does not in terms deny such right. It is true it says 'himself paying his own poll-taxes' for the years mentioned, but the general principle, *qui facit per alium facit per se*, should apply, and the payment through an authorized agent would be the payment by the voter himself." See also sec. 110, McCrary on Elections, 15 Cyc. p. 297.

In our view, the constitutional provision aimed at that class of voters who would not manifest enough interest in the government or the welfare of the community by qualifying themselves as voters in the prescribed mode, but would be willing to exercise the right to vote as any other citizen, although their right to do so be secured by permitting another to illegally pay the taxes required of them, and for corrupt purposes, merely designed that the payment should be the personal act of the citizen—that it should be by him and with his means. If such was not the purpose, surely the real purpose would have been declared in clear, unmistakable language at the appropriate place, instead of leaving the purpose to depend upon construction.

Within this limitation, the constitutional requirement would be met in the instances we have adverted to and also where the tax is paid with the citizen's money sent to the treasurer by a member of his family, by his clerk, or other duly authorized agent, and perhaps there are other ways in which the money could be paid to the treasurer which would justify and require him to include the name of the tax-payer in the list he is required to certify to the auditor of public accounts and to the clerk of his county or corporation.

It is also claimed that this view would put the burden upon the treasurer of having to determine in every case where the payment is not made by the voter in *bodily presence,* whether the payment is out of the tax-payer's own means or out of

means furnished by another, and that the burden could not be borne at all by a new treasurer coming into office, as he would not be able to tell who had and who had not personally paid their poll-taxes for the two preceding years.

To the first of these contentions we can only repeat, that the mandate of the Constitution requires the treasurer to include in his list all persons who have personally paid the required poll-taxes at least six months next preceding an ensuing regular election; and to the other contention the answer is that if no record be made in the treasurer's office of the payment of poll-taxes and when paid, the incoming newly elected treasurer would encounter the same difficulty in certifying these facts as he would encounter in certifying who had personally paid the two preceding years. If a record in the treasurer's office sufficient to enable a newly elected treasurer to perform these duties be not kept, it is entirely within the power of the legislature to require that such a record be kept, and the fact that this has not heretofore been required can have no sort of bearing on the determination of the question we have before us.

It follows that the judgment of the lower court complained of will be reversed and annulled, and this court will enter its judgment awarding plaintiffs in error a writ of mandamus, directed to H. S. Herman, as treasurer of the city of Norfolk, requiring him to make up, verify and file with the clerk of the corporation court of said city a list, as provided for in section 38 of article II of the Constitution, of not only persons who in bodily presence paid, but also all persons who "personally paid" to him prior to May 2, 1908, the poll-taxes required of them, as said words "personally paid" employed in said article of the Constitution are construed in this opinion; the said judgment, however, in favor of plaintiffs in error will be without costs against said H. S. Herman.

*Reversed.*